## IN RICHMOND SUPERIOR COURT.

### John Hunter *vs.* James S. Shaffer.

### *Trover.    Verdict for Plaintiff and Motion for New Trial.*

Where the descendants of a negro had contracted marriage with a free white person in a neighboring state—enjoyed liberty and property for a long time, and transmitted them to her descendants, the courts in this State presumed her free so far as to give effect to a deed made by her, until some one should assert and maintain a right to her as his slave.

The subject of this suit a negro slave, named Sam. Plaintiff's title to the slave is a deed from Judith Ann Lehiffe to him, by which Sam, together with other property is conveyed for certain purposes mentioned. The deed bears date 21st Feb. 1812, and was registered in the Secretary of State's Office, South Carolina, 7th March, 1812, and in Edgefield district on the 2d June, 1826. At the trial, Sam was proven to have been the property of Maurice Lehiffe, and after his death to have been purchased at the sale of his estate by Judith Ann Lehiffe, his widow, and that she in contemplation of a second marriage executed the deed of trust by which plaintiff claims title. It was also proven that Sam had been sold by Bowers, the second husband of Mrs. Lehiffe, and coming into the possession of Barney M. Kemin, was seized by the sheriff of Richmond county, and sold as his property, and that defendant became the purchaser with full notice of plaintiff's claim. The identity of the slave, his value and conversion by defendant were fully proven.

On the part of the defendant it was proven that Mrs. Lehiffe was the daughter of Mrs. Holmes, who was the daughter of George Galphin by a black woman, and a recovery was resisted on the ground that the deed under which the plaintiff claims is void, having been executed by the descendants of an African, presumed by law to be a slave, and incapable of holding or conveying property; of the condition of the black woman, the grand-mother of Mrs. Lehiffe, there was no evidence; but there was evidence that Mrs. Holmes and Mrs. Lehiffe were always considered free, and were the wives of free white citizens of South Carolina.

The court having charged the jury in favor of the deed and of plaintiff's right to recover, a verdict was rendered accordingly. Whereupon the defendant moves for a new trial on the following grounds.

1. " Because the deed under which the plaintiff claims can

convey no title, inasmuch as it was not executed by a person capable of conveying property."

2d. "Because the court erred in charging the jury that where it is proved that the African blood exists in an individual, every presumption is in favor of the liberty of that individual, and a state of slavery cannot be inferred from it."

3d. "Because the verdict is contrary to law, and the proper construction of the evidence."

These three grounds constitute in fact but one, namely, misdirection, of the Judge as to the validity of the deed, and the ability of Mrs. Lehiffe to hold and convey property : for if Mrs. Lehiffe be a person capable of holding and conveying property, I apprehend there can be but little doubt of plaintiff's right to recover. And here it is proper to remark that the opinion of the court is incorrectly stated in the second ground. The court did not charge that where it is proved that the African blood exists in an individual, every presumption is in favor of the liberty of that individual. But the court did charge that the common law rule of presumptions in favor of life and liberty constituted a part of the law of this State, and had its full force until the act, passed 10th May, 1770, innovated upon that rule and set up a presumption against the liberty of negroes and their descendants; which latter presumption deriving its strength altogether from a statutory regulation, and the local policy of the State, could not be construed to extend to any person living beyond it. Not even to South Carolina, where Mrs. Lehiffe and her mother lived, though that being a slave holding State, her policy may be supposed identical with our own ; and that these persons having been always considered free there, must be considered free here, at least, for the purposes of this suit, until the contrary be shown. There is no one who has a stronger conviction than I have of the necessity which exists in our State, and in every other, where absolute slavery is known, of preserving a clear and broad distinction between the free citizen and the slave, and of preserving within the just limits prescribed by law, those of the slave race who may have obtained their liberty. Without such distinction, the rights of the master cannot be sufficiently protected, nor the public sufficiently guarded against the disorders consequent on an ill governed slave population, and the confusion of ranks and orders in society. But it is not believed that either the local regulations of this State, or the general policy of all slave holding States, are at all affected by the decision in this case. This is not a case in which any question arises as to the rights of a master over a slave, or of one alleged to be a slave claiming to be free, nor any question of local or general police. The plaintiff is a free citizen having an unquestionable right to sue. His title to the slave Sam is derived, it is true, from the descendant of a negro, but she has been ever, in the State where she lived, considered free.

29

Now though a slave is from the very nature of his condition incapable of ownership, being himself the absolute property of another, there never has been in this State until recently, any law to prevent free persons of color from owning property, and now the restriction is confined to real estate in certain places, and to slaves. At the date of this deed there was no restriction whatever. Nor has it been shown to the court that in South Carolina at that time or even at the present moment, there exists any law to prevent free persons of color from owning and transferring property of any sort; and this deed seems so far to have met with the sanction of the laws of South Carolina and her public functionaries, as to have been registered in the office of the Secretary of State, and in the district where the parties lived and must have been well known. It is objected, however, that their being considered free does not make them so, inasmuch as freedom cannot be established by reputation. This is true to a certain extent. In all disputes between an owner and person of color claiming to be free, emancipation must be proved. So too where any question arises under police regulations, touching the freedom or slavery of a person of color. But it would be carrying this salutary rule to an unnecessary and dangerous extent to embrace within it those who claim property purchased from free persons of color universally acknowledged to be free, whose ancestors were acknowledged free in the State where they lived, and who have constantly bought and sold property as free persons. To require of those who thus hold and claim property proof of an actual emancipation of those under whom they claim, and who are never even reputed to be slaves before a right of property so held could be asserted, would be to subject them to every lawless invader who might seize upon the property, and to leave them without redress. In this case the defendant sets up no right to Sam not derived from the same source with the right of the plaintiff, acquired too with a full knowledge of the plaintiff's prior right; and it would be absurd to say that Mrs. Lehiffe could make a contract of marriage with Bowers, through whom defendant claims, and could not make the previous settlement, under which the plaintiff claims. Whatever imperfection in this respect is in the title of one, exists in that of the other also, as they are both derived from the same source, pure or impure. It is not necessary to say what would be the decision of the court if Mrs. Holmes and Mrs. Lehiffe had lived in this State, and the deed under which the plaintiff claims had been made under our own laws, for the fact that those persons have been considered free, and enjoyed their liberty and property for nearly half a century in a neighboring State, that they have formed contracts of marriage with free white citizens, and successively transmitted their liberty and property to their descendants, will require

this court to presume them free, so far as to sustain their rights of property, and the rights of those claiming under them, against a wrong doer, until some one shall assert a right to them as his slaves. The new trial is refused.